UNITED MISSOURI BANK OF KANSAS CITY, N.A., Plaintiff,

v.

The BANK OF NEW YORK, Defendant.

No. 88–1238–CV–W–3.

United States District Court, W.D. Missouri, W.D.

Oct. 6, 1989.

James F. Duncan and Ann Thompson, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiff.

John E. Hilton and Kevin M. Cushing, Carmody, MacDonald, Hilton & Wolf, P.C., Clayton, Mo., for defendant.

## ORDER

ELMO B. HUNTER, District Judge.

Before the Court is defendant's Motion to Dismiss plaintiff's complaint for lack of personal jurisdiction or, alternatively, to dismiss Count II of plaintiff's complaint for failure to state a cause of action for conversion. Plaintiff has responded to defendant's motion and has moved for an Order requiring defendant to pay plaintiff the reasonable expenses and attorneys' fees incurred in deposing three of defendant's employees in New York and in preparing plaintiff's motion for an award of reasonable expenses and attorneys' fees. The relevant facts will be briefly stated.

Plaintiff is a national banking association with its principal place of business located in Kansas City, Missouri. Defendant, on the other hand, is a bank chartered by the State of New York with its principal place of business located in New York, New York. Defendant maintains no office in Missouri nor does it retain any employees in Missouri. Furthermore, defendant does not maintain an agent in Missouri to receive service of process.

Ryan Mortgage Acceptance Corporation ("Ryan") issued Collateralized Mortgage Bonds (the "Bonds"). Defendant did not participate in the marketing and sale of these bonds. According to defendant, these bonds were marketed by an underwriter who purchased the entire bond issue at a discount from Ryan and then resold the bonds to the public pursuant to the terms of the prospectus.

Defendant entered into an Indenture with Ryan dated October 3, 1983, whereby it agreed to act as trustee relative to the payment of the principal and interest owed to the bondholders by Ryan pursuant to the terms of the bonds. Ryan would deposit funds into an "interest" account established with defendant, and defendant would mail interest checks to the bondholders. Likewise, when the principal was to be repaid, Ryan would deposit funds into a "principal" account established with defendant, and, upon presentation of the bonds to the defendant by the bondholders, defendant would issue a check for the face amount of the bond.

On September 25, 1984, plaintiff purchased $500,000 of the bonds on behalf of one of its customers. Consequently, defendant mailed checks from New York to plaintiff in Missouri. According to defendant, its contacts with Missouri relative to this bond transaction were limited to correspondence and telephone calls.

Plaintiff asserts that Ryan redeemed the bonds on October 1, 1986. Plaintiff alleges that neither Ryan nor the defendant notified plaintiff of the redemption and that defendant retained the bond redemption funds for its own use. According to plaintiff, it did not receive the bond redemption proceeds from defendant until December 30, 1987, and was obliged to indemnify its customer for the reasonable earning value of those proceeds from the redemption date until that time. Plaintiff has asserted claims for Money Had and Received and for Conversion, seeking to recover damages in the amount of $41,012.33 plus interest.

### I. *Defendant's Motion to Dismiss*

■ In considering a motion to dismiss for lack of personal jurisdiction over a nonresident defendant, a federal court sitting in diversity must engage in a two-step inquiry: first, whether state law confers personal jurisdiction over the defendant; and

second, whether such an assertion of jurisdiction is consistent with the due process clause of the fourteenth amendment. *Charles Schmitt v. Gran Prix Auto Wholesales, Inc.*, 616 F.Supp. 1191, 1192 (E.D.Mo.1985). The party seeking to invoke federal jurisdiction bears the burden of establishing that personal jurisdiction does exist. *Id.*

Missouri's long-arm statute, which authorizes service over a nonresident defendant, provides in relevant part:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child....

3. *Only causes of action arising from acts enumerted in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section* (emphasis added).

Mo.Rev.Stat. § 506.500 (Vernon Supp. 1989). Service of process under this statute is effective to extend jurisdiction over nonresident defendants to the limits allowed under the due process clause. *State*

*ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo.1970) (en banc).

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), establishes that for personal jurisdiction to exist, "due process requires ... a defendant ... [to] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Minimum contacts may give rise to "general" or "specific" personal jurisdiction. *Hunt v. Erie Insurance Group*, 728 F.2d 1244, 1246 (9th Cir. 1984). When a State exercises jurisdiction over a nonresident defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404, 411 n. 8 (1984). When, on the other hand, a State exercises personal jurisdiction over a nonresident defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State is exercising "general jurisdiction" over the defendant. 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9, 80 L.Ed.2d at 411 n. 9. General personal jurisdiction requires that a nonresident defendant's contacts with the forum be "substantial and continuous." *See Hunt*, 728 F.2d at 1246.

Plaintiff does not allege that this cause of action arises out of defendant's contacts with the forum. Instead, plaintiff contends that this Court may properly exercise general personal jurisdiction over the defendant, because defendant's business activities within Missouri have been substantial and continuous.[1] The Court agrees that the exercise of general personal jurisdiction over defendant would not offend *due process*. However, the Court must still determine whether state law confers personal jurisdiction over the defendant even though this suit admittedly does not arise out of defendant's extensive business activity within this forum. After reviewing the

---

1. Through discovery, plaintiff established defendant has conducted substantial and continuous business activity in the State of Missouri. Plaintiff details this significant activity in its Suggestions in Opposition to Defendant's Motion to Dismiss.

pertinent case law, the Court finds that the Missouri long-arm statute prohibits the exercise of general personal jurisdiction over a nonresident defendant.

In *Cunningham v. Subaru of America, Inc.*, 620 F.Supp. 646, 647 (W.D.Mo.1985), the plaintiff alleged that defendant Subaru had transacted business in Missouri, but he did not allege the cause of action arose from that business. The plaintiff contended that Missouri case law has abrogated the long-arm statute's "arising from" language and that Missouri long-arm analysis and constitutional due process analysis are now coextensive. *Id.* The Honorable Howard Sachs concluded, after carefully reviewing relevant authority, that service was not authorized by the Missouri long-arm statute because "plaintiff . . . demonstrated no factual connection between the litigation and the forum sufficient to sustain long-arm jurisdiction over defendant. . . ."

The Honorable Russell Clark reached a similar conclusion in *Wooldridge v. Beech Aircraft Co.*, 479 F.Supp. 1041 (W.D.Mo. 1979). Judge Clark determined that the unambiguous language of § 506.500 compels the "inescapable conclusion" that Missouri courts will exercise long-arm jurisdiction over a nonresident defendant only if some portion of its minimum contacts with Missouri gives rise to the action asserted. *Id.* at 1054. The fact that decisions such as *Cunningham* and *Wooldridge* have not been criticized by the Missouri courts indicates they represent a correct statement of Missouri law.[2] Thus, the Missouri long-arm statute is *not* effective to extend jurisdiction to the full limits allowed under the due process clause, because due process permits the assertion of general personal jurisdiction over a nonresident defendant.

In its Response to Defendant's Reply to Plaintiff's Suggestions in Opposition to Defendant's Motion to Dismiss, plaintiff asserts that "the magnitude of the defendant's Missouri business activities made reliance on long-arm jurisdiction unnecessary because this court may clearly assert *general* jurisdiction over [defendant]." This statement is erroneous. If a defendant is not physically located within the State of Missouri, valid service of process could only be made under the Missouri long-arm statute. *Wooldridge v. Beech Aircraft Corp.*, 479 F.Supp. 1041, 1045 (W.D.Mo. 1979). Thus, personal jurisdiction can be exercised over defendant only pursuant to the Missouri long-arm statute, and that statute does not permit general personal jurisdiction. The Court therefore concludes that defendant's challenge to personal jurisdiction is valid because service was not authorized by the Missouri long-arm statute.[3]

## II. *Plaintiff's Motion for Award of Expenses and Fees*

Plaintiff moves pursuant to Rules 11 and 37(d), Fed.R.Civ.P., for an Order requiring defendant to pay attorneys' fees and expenses in the amount of $3,644.44. The Court has jurisdiction to determine its

---

**2.** Plaintiff cites *State ex rel. Caine v. Richardson,* 600 S.W.2d 82 (Mo.App.1980) in support of its argument that general personal jurisdiction exists over defendant. In *Richardson* the Court states:

> It is clear that such minimum contacts are met by a single act done or a single transaction consummated within the forum state if the cause of action arises from that act or transaction. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). It is also clear that if a corporation is in fact conducting business within a state it may be subject to personal jurisdiction in litigation not arising from the business transacted and the exercise of such jurisdiction does not violate the due process clause. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

*Id.* at 84. In *Richardson* service of process was obtained on the defendant under section 351.-633 R.S.Mo. (1978), the "single-act tort" long-arm statute, and section 506.150 R.S.Mo. (1978), the general service statute for corporations "doing business" in Missouri. Because service of process was not attempted pursuant to section 506.500, the long-arm statute in question in this case, the Court does not find the language in *Richardson* to be persuasive.

**3.** Because the Court concludes that it cannot exercise personal jurisdiction over defendant in the instant case, it need not reach the second question presented by defendant's Motion to Dismiss, i.e., whether Count II of plaintiff's Complaint states a cause of action for conversion.

own jurisdiction. *English v. 21st Phoenix Corp.*, 590 F.2d 723 (8th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). Thus, it is clear that the Court has jurisdiction over discovery conducted to aid in determining whether *in personam* or subject matter jurisdiction exists, *Wells Fargo & Co. v. Wells Fargo Express Company*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977), and can impose sanctions such as costs and fees for discovery abuse even in the absence of jurisdiction. *Ilan–Gat Engineers, Ltd. v. Antigua International Bank*, 659 F.2d 234, 239 (D.C.Cir.1981). Accordingly, the Court has authority to rule on plaintiff's motion for attorneys' fees and expenses even though it lacks *in personam* jurisdiction over defendant. In ruling on plaintiff's motion, the Court makes the following findings of fact.

4. Of particular importance are the following interrogatories and defendant's initial responses to those interrogatories:

   3. State the name and business address of every employee of defendant who has been in Missouri to conduct business on behalf of defendant. For each such employee state:
   (a) The dates when the employee was in Missouri;
   (b) The nature of the business conducted by the employee in Missouri;
   Answer: The Bank of New York does not conduct business in Missouri and therefore does not send employees to Missouri.

   (4) State the name and business address of each employee of defendant who has any job responsibilities that include soliciting or maintaining correspondent banking relationships with any bank located in Missouri.
   Answer: The Bank of New York does not solicit or maintain correspondent banking relationships with any bank located in Missouri.

   (8) Has defendant made any loans to any borrowers located in Missouri? If so, for each such loan state:
   (a) The name and address of the borrower;
   (b) The date of the loan;
   (c) The amount of the loan.
   Answer: The Bank of New York has not made any loans to any borrowers in Missouri.

   (9) Has defendant attempted to make a loan to any prospective borrower located in Missouri, where the loan transaction was not completed? If so, for each such attempt, state:
   (a) The name and address of the prospective borrower;
   (b) The date of the negotiations for the loan;
   (c) The amount of the prospective loan.
   Answer: No.

In response to defendant's motion to dismiss for lack of *in personam* jurisdiction, plaintiff propounded a set of interrogatories to defendant designed to establish the extent of defendant's activities within the State of Missouri. Mr. Michael Amodio, Vice President of defendant, answered the interrogatories and unequivocally denied under oath that defendant conducts any business in Missouri.[4] As a direct result of defendant's unqualified denial of any business contact with Missouri, plaintiff's counsel traveled to New York and deposed three of defendant's employees. Plaintiff discovered through these depositions that defendant in fact has significant business contacts with the forum. It was not until after plaintiff uncovered this information through discovery that defendant filed Supplemental Answers to Plaintiff's Interrogatories setting forth the correct responses.[5]

5. The information provided by defendant's Supplemental Answers to Plaintiff's Interrogatories completely contradicted defendant's initial responses. The supplemental answers differed from defendant's initial denials in the following manner:

   3. State the name and business address of every employee of defendant who has been in Missouri to conduct business on behalf of defendant. For each such employee state:
   (a) The dates when the employee was in Missouri;
   (b) The nature of the business conducted by the employee in Missouri;
   Answer: The employees of The Bank of New York who have been in Missouri on behalf of Defendant were engaged in the marketing of bank products to existing and prospective customers. In the event that the employees marketing efforts are limited to a single or specific type of bank product, the specialization is so noted. No employee was in Missouri relative to the transaction involved in this lawsuit.
   Please note all employees are located in the main office of The Bank of New York at 48 Wall Street, New York, New York.
   MIDWEST DIVISION:
   *Vernon L. Van Hise, S.V.P.*
   December 16, 17 and 18, 1987
   *Leslie V. Ward, V.P.*
   May 30 and 31, 1988 and June 1, 1988
   *John J. Jordan, A.T.*
   January 26, 27, and 28, 1988
   February 18 and 19, 1988
   March 23, 1988
   *Charles D. Tansey (no longer employed)*
   August 26, 27 and 28, 1987
   November 4 and 5, 1987

December 16, 17 and 18, 1987
*David Babbitt*
June 18 and 19, 1987
July 20, 21, 22 and 23, 1987
August 18, 19, 20 and 21, 1987
August 26, 27 and 28, 1987
October 6, 7, 8 and 9, 1987
November 4 and 5, 1987
December 16, 17 and 18, 1987
January 26, 27, 28 and 29, 1988
February 18 and 19, 1988
March 21, 23, 24 and 25, 1988
May 12 and 13, 1988
May 26 and 27, 1988
May 30 and 31, 1988
June 1, 1988
July 12 and 13, 1988
July 26, 27 and 28, 1988
August 10, 1988
September 26, 27, 28 and 29, 1988
October 5 and 6, 1988
OIL, GAS AND EXTRACTIVES INDUSTRY DIVISION:
*R. Scott Cassie, A.V.P.*
October 27, 1987
March 22, 1988
April 29, 1988
July 19, 1988
April 24, 1989
*Daniel Gates, V.P.*
October 27, 1987
REAL ESTATE & CONSTRUCTION LENDING:
*Robert E. Walsh, V.P.*
June 16, 1988
PUBLIC UTILITIES:
Michael F. Donohue, Jr., V.P.
Ian K. Stewart, A.V.P.
John McCahill
*Guy R. Mule, S.V.P.*
Approximately three visits in 1986, 1987 and 1988 one in 1989, by any one or two of the above listed employees.
SECURITIES & COMMODITIES DIVISION:
*Roseanne M. Witmer, S.V.P.*
October 2, 1986
March 23, 1987
February 10, 1988
March 8, 1989
*William M. Tomai, V.P.*
October 2, 1986
March 23, 1987
February 10, 1988
CORPORATE FOREIGN EXCHANGE:
Harlan Levinson, A.T. (no longer employed)
*Camille Pacht, A.T.*
January 28 and 29, 1988
CASH MANAGEMENT:
*Laurel A. Neu, V.P.*
January 22 and 23, 1987
March 21, 1988
February 15 and 16, 1989
*Martin Quinn (no longer employed)*
January 22 and 23, 1987
May 14 and 15, 1987
October 8 and 9, 1987
February 4 and 5, 1988

*George Stachiw, A.T.*
March 21, 1988
BANK OPERATIONS:
*Kenneth Van der Sluis, A.V.P.*
May 12, 1988
CREDIT:
*Frank Wang, V.P.*
October 5 and 6, 1988
ASSET DEVELOPMENT & SALES:
*David Walsh, A.V.P.*
October 5 and 6, 1988
CORPORATE TRUST:
*Thomas A. Wertimer, A.V.P.*
March 30, 1988
August 19, 20 and 21, 1987
*Patricia C. Dimon, V.P.*
June 22, 1988
March 25, 1987
*Daniel E. Davies, A.T.*
January 11, 12 and 13, 1988
*Leon X. Urbaitel, V.P.*
February 24 and 25, 1987
August 19, 20 and 21, 1987
*Claire Degnan*
March 23, 24 and 25, 1988
*Frank Carcich (no longer employed)*
February 24 and 25, 1987
STOCK TRANSFER ADMINISTRATION:
*William J. Skinner, V.P.*
February 28, 1989
March 1, 1989
*Robert Kavanaugh, A.V.P.*
January 10, 1989
*Anthony Romano, A.T.*
January 10, 1989
TREASURY PRODUCTS:
*Mary Nolan, A.T.*
August 10, 1988
INSTITUTIONAL TRUST:
*Roy Lanza, V.P.*
January 26, 27 and 28, 1988
SECURITIES PROCESSING MARKETING:
*William Peters, V.P.*
March 8 and 9, 1988
June 27 and 28, 1988
March 23 and 24, 1989
*Henry Banch, V.P.*
September 16 and 17, 1987
March 2 and 3, 1988

    4. State the name and business address of each employee of defendant who has any job responsibilities that include soliciting or maintaining correspondent banking relationships with any bank located in Missouri.
Answer: David Babbitt
        48 Wall Street
        New York, New York
    8. Has defendant made any loans to any borrowers located in Missouri? If so, for each such loan state:
    (a) The name and address of the borrower:
    (b) The date of the loan;
    (c) The amount of the loan.
Answer:

| Company | Available Credit Line |
|---|---|
| Interco | Mid–Eight Figures |
| 1015 S. Hanley Road | |
| St. Louis, Missouri | |

Rule 11 is not properly used to sanction the inappropriate filing of papers where other rules more directly apply. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986). The instant case is more appropriately governed by Rule 26(g), Fed.R.Civ.P., which applies exclusively to discovery requests and responses. Rule 26(g) provides:

(g) Signing of Discovery Requests, Responses, and Objections. Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the request, response, or objection and state the party's address. The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response, or objection, and a party shall not be obligated to take any action with respect to it until it is signed.

If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

The term "response" includes answers to interrogatories. Fed.R.Civ.P. 26(g) advisory committee's note to 1983 amendment.

Although this circuit has not yet considered the interpretation and application of Rule 26(g), other circuits have concluded that district courts should look to case law under Rule 11 in interpreting Rule 26(g). *See Apex Oil Co. v. Belcher Co. of New*

| Company | Available Credit Line |
|---|---|
| Graybar<br>34 N. Meramec Avenue<br>St. Louis, Missouri | Low–Eight Figures |
| General Dynamics<br>Pierre Laclede Center<br>St. Louis, Missouri | Mid–Eight Figures |
| May Department Stores<br>611 Olive Street<br>St. Louis, Missouri | Mid–Eight Figures |
| Ralston–Purina<br>Checkerboard Square<br>St. Louis, Missouri | Low–Seven Figures |
| ITT Financial<br>12555 Manchester<br>St. Louis, Missouri | Low–Eight Figures |
| Thermadyne<br>101 S. Hanley Road<br>St. Louis, Missouri | Mid–Eight Figures |

| Company | Available Credit Line |
|---|---|
| Union Electric Co.<br>1901 Gratiot Street<br>St. Louis, Missouri | Mid–Seven Figures<br>Low–Eight Figures |
| A.G. Edwards & Sons, Inc.<br>St. Louis, Missouri | Mid–Eight Figures |

9. Has defendant attempted to make a loan to any prospective borrower located in Missouri, where the loan transaction was not completed? If so, for each such attempt, state:

(a) The name and address of the prospective borrower;

(b) The date of the negotiations for the loan;

(c) The amount of the prospective loan.

Answer: The only proposal prepared for a company located in Missouri but not accepted:

| Company | Available Credit Line |
|---|---|
| Rawlings Sporting Goods<br>P.O. Box 22000<br>St. Louis, Missouri | Low–Eight Figures<br>July 1988 |

*York, Inc.,* 855 F.2d 1009, 1015 (2d Cir. 1988); *Insurance Benefit Administrators, Inc. v. Martin,* 871 F.2d 1354, 1360 (7th Cir.1989). This conclusion is supported by the Advisory Committee's Note which states that Rule 26(g) parallels the amendments to Rule 11. Fed.R.Civ.P. 26(g) advisory committee's note to 1983 amendment.

■ The standard by which courts are to judge conduct challenged under Rule 11, and therefore under Rule 26(g), is one of objective reasonableness. *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 124 (8th Cir.1987).[6] The rule as amended in 1983 is designed to discourage the filing of frivolous court papers or those that are " 'legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.' " *Id.* The issue is whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading. *O'Connell v. Champion International Corp.,* 812 F.2d 393, 395 (8th Cir. 1987). Applying these standards to the facts in the instant case, the Court concludes that defendant has violated Rule 26(g) and that plaintiff is entitled to recover its expenses and attorneys' fees incurred in deposing defendant's employees and in preparing this motion.

The clear purpose of plaintiff's interrogatories was to determine the extent of defendant's contacts with the forum. Defendant's initial response to the interrogatories was that "The Bank of New York does not conduct business in Missouri." Defendant did not attempt to qualify its answers in any way, but instead absolutely and unequivocally denied any business contact with the forum. As a direct result of these responses, plaintiff was forced to depose three of defendant's employees in New York. Defendant supplemented its answers to plaintiff's interrogatories only after plaintiff discovered the true extent of defendant's activities in Missouri. Several of these supplemental responses complete-

ly contradict defendant's initial answers. The Court is compelled to find that defendant did not conduct either a reasonable inquiry or any inquiry at all into the facts underlying its initial responses to plaintiff's interrogatories. No objective basis existed for defendant's initial answers to plaintiff's interrogatories.

Importantly, defendant provides the Court with no justification for its initial failure to properly respond to plaintiff's interrogatories. Defendant suggests that it should be excused because it "is a very large banking enterprise which employs approximately eight thousand (8,000) employees." This argument has no merit. The Court is not faced with a situation in which defendant qualified its initial responses because it lacked time to conduct an adequate investigation into the facts. Instead, defendant denied all contacts with Missouri without suggesting that because of size, etc., it needed additional time to fully respond to plaintiff's interrogatories.

Defendant also seeks to avoid sanctions on the basis that the depositions conducted by plaintiff did not result in sufficient information to overcome defendant's motion to dismiss. This argument is irrelevant. Defendant certified that it conducted a reasonable inquiry before initially answering plaintiff's interrogatories. The ensuing events indicate defendant did not conduct any inquiry before responding to plaintiff's interrogatories. Defendant made no attempt to supplement its answers until after plaintiff deposed its employees. Furthermore, defendant provides no justification for its conduct. Under these circumstances, the Court finds that an award of reasonable attorneys' fees and expenses to plaintiff is appropriate.

■ Plaintiff's counsel has provided the Court with a verified statement detailing the attorneys' fees and expenses incurred in deposing defendant's employees in New York and in preparing plaintiff's motion for attorneys' fees and expenses. The Court

---

6. Prior to the 1983 amendment to Rule 11, the only inquiry was the subjective belief of the signer at the time the pleading was signed. The revised rule changes the standard from a subjec-

tive good faith standard to an objective standard. *Adduono v. World Hockey Ass'n,* 824 F.2d 617, 621 (8th Cir.1987).

**416**

finds that these attorneys' fees and expenses are reasonable. The Court notes that defendant's counsel did not certify defendant's responses to plaintiff's interrogatories as required by Rule 26(g). However, this does not prevent the Court from imposing sanctions upon defendant, The Bank of New York, because it certified its initial responses to plaintiff's interrogatories when no objective basis existed for believing in the truth and accuracy of those responses.

### Conclusion

It is hereby ORDERED that defendant's Motion to Dismiss for lack of personal jurisdiction is granted. It is FURTHER ORDERED that, because the Court finds that defendant has violated the requirements of Rule 26(g), plaintiff is awarded attorneys' fees and expenses in the amount of $3,644.44.

IT IS SO ORDERED.